VORYS, SATER, SEYMOUR AND PEASE LLP
Emily A. Papania (SBN 325027)
4675 MacArthur Court, Suite 700
Newport Beach, CA 92660
Telephone: (949) 526-7905
Facsimile: (949) 383-2783
eapapania@vorys.com

*Attorneys for Defendant*
Zale Delaware Inc.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brian Whitaker | Case No. 3:21-cv-09126-SK |
|               Plaintiff, | Magistrate Judge Sallie Kim |
| vs. | |
| Zale Delaware, Inc., a Delaware Corporation | **DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
|               Defendant. | **Hearing Date:** March 21, 2022<br>**Hearing Time:** 9:30 am PST |

PLEASE TAKE NOTICE THAT on March 21, 2022 at 9:30 am, or as soon thereafter as can be heard before the Honorable Sallie Kim in Courtroom C of the United States District Court, Northern District of California, Defendant Zale Delaware, Inc. ("Defendant"), pursuant to Federal Rule of Civil Procedure 12(b)(1), will and hereby does move this court to dismiss the Complaint of Plaintiff Brian Whitaker ("Plaintiff") with prejudice because (1) Plaintiff's First Cause of Action for violation of the Americans with Disabilities Act ("ADA") is moot as the sole barrier to access alleged in the Complaint, to the extent it ever existed, has been remedied,

meaning this Court lacks subject matter jurisdiction over this claim; and (2) the Court should decline to exercise supplemental jurisdiction over Plaintiff's Second Cause of Action for violation of California Unruh Civil Rights Act ("Unruh Act").

In the alternative, Zale moves this Court to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because the sole barrier to access alleged therein never existed as Defendant provides an equivalent facilitation affording substantially equivalent or greater access to the enjoyment of Defendant's goods and services as required by the ADA.

This motion is based upon this Notice of Motion and Motion and Memorandum of Points and Authorities, the accompanying Declaration of Megan Bibeau, all pleadings and papers on file with this Court, and such evidence and argument as may be presented at or before the hearing on this matter.

Dated: February 18, 2022          Respectfully Submitted,

VORYS, SATER, SEYMOUR AND PEASE, LLP

By */s/ Emily A. Papania*
EMILY A. PAPANIA
Attorneys for Defendant
Zale Delaware Inc.

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.      INTRODUCTION

3       The Court should dismiss Plaintiff's Complaint for lack of subject matter
4  jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because the sole barrier to access
5  alleged therein, to the extent it ever existed, has been remedied. Accordingly,
6  Plaintiff's claim for violation of Title III of the ADA ("ADA Claim") is moot as
7  there is no longer an active controversy. Without jurisdiction over Plaintiff's ADA
8  Claim, the Court should decline to exercise supplemental jurisdiction over Plaintiff's
9  derivative claim for violation of the Unruh Act ("State Law Claim") pursuant to 28
10 U.S.C. § 1367 and dismiss Plaintiff's Complaint in its entirety.

11      In the alternative, the Court should dismiss Plaintiff's Complaint pursuant to
12 Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief can be
13 granted. It is undisputed that the subject establishment has an ADA-compliant sales
14 counter at which customers can use wireless point of sale devices ("Wireless POS")
15 which provide substantially equivalent or greater access to the enjoyment of
16 Defendant's goods and services to complete transactions.  As such, Defendant is
17 fully compliant with the ADA.

18

## II.     STATEMENT OF FACTS

19      Plaintiff's Complaint alleges that he visited a Piercing Pagoda kiosk owned by
20 Defendant (the "Kiosk") in November 2021 and encountered a single barrier to
21 access: the absence of an ADA compliant sales or service counter. (ECF No. 1, ¶ 1.)[1]
22 Plaintiff acknowledges that the Kiosk has a lowered portion of the counter that
23 complies with the requirements of the ADA. (*Id*. at ¶ 12). Plaintiff's sole basis for his
24 allegation is the location of wired point of sale devices ("Wired POS") on the

25 _____

26 [1] This alleged barrier also serves as the sole basis of Plaintiff's second cause of action, making it
entirely derivative of the first cause of action. (ECF No. 1, ¶ 30) (stating that "the Unruh Act
27 provides that a violation of the ADA is a violation of the Unruh Act").

28

1  Kiosk's higher counters that he alleges cannot reach the lowered portion of the
2  counter. (*Id.*)

3       But the Kiosk has fully wireless POS devices—handheld, cellphone-like
4  devices connected directly to iPads operated by the store's employees which are
5  available to complete transactions, regardless of the ability or disability of the
6  customer—that can be used at the lower, compliant counter by Plaintiff. (Declaration
7  of Megan Bibeau ("Bibeau Dec."), attached as Exhibit A, ¶¶ 3-4, 6.) Plaintiff did not
8  ask about either the Wired POS or Wireless POS devices or, indeed, for any help at
9  all during his visit, nor did Plaintiff otherwise investigate the available
10 accommodations at the Kiosk. (*Id.* at ¶ 5.)

11      On February 4, 2022, Paul Bishop, an ADA Certified Access Specialist
12 inspected the Kiosk. Mr. Bishop found that the lowered portion of the Kiosk's
13 counter measures 34-1/4" above the floor, and 42" long, well within the required
14 dimensions for compliance with the ADA. (Report of Paul Bishop ("Bishop Rep."),
15 attached as Exhibit B, p. 4.) He also noted that the store provided a Wireless POS
16 device which "can be handed to the customer and the customer can tap, insert, or
17 slide their credit card using the device to pay for merchandise." (*Id.* at 7.) In light of
18 the store's compliant sales counter, coupled with the availability of the Wireless POS
19 devices—which permit full service at the ADA compliant sales counter—Mr. Bishop
20 determined that the Kiosk "complies with the ADAS and CBC with respect to
21 providing an accessible sales and service counter," findings that completely rebut
22 Plaintiff's sole allegation here. (*Id.* at 9.)

23 **III.   LEGAL STANDARD**

24      "The Article III case or controversy requirement limits a federal court's
25 subject matter jurisdiction by requiring . . . that plaintiffs have standing and that
26 claims be 'ripe' for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598
27 F.3d 1115 (9th Cir. 2010). To establish standing, "a plaintiff must show [he] has

28

suffered (1) 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Failure to satisfy Article III standing requirements requires dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Gen. Atomic Co. v. United Nuclear Corp.*, 4 655 F.2d 968-69 (9th Cir. 1981).

Jurisdictional attacks can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Safe Air for Everyone v. Meyer*, 373 F.3d at 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations in the complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction. *Id*. at 1039. Importantly, in such an analysis, the allegations in the complaint are not presumed to be true: "[t]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *see also White*, 227 F.3d at 1242. Defendant brings both facial and factual attacks on the sole allegation in the Complaint.

Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's

jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 373, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d at 1122; *Shayler v. Patel*, No. 2:20-cv-00235-ODW (KSx), 2020 U.S. Dist. LEXIS 136451, at *3 (C.D. Cal. July 31, 2020). Plaintiff cannot do so here.

### A. Legal Standard for Mootness under Rule 12(b)(1)

Fed. R. Civ. P. 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction where, among other things, a claim is moot. A claim may become moot if (1) subsequent events have made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur, or (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *Shayler*, LEXIS 136451 at *3-5 (citing *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998)). Put another way, when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome, the case is deemed moot. *Norman-Bloodsaw*, 135 F.3d at 1274. "If a court determines that a case is moot, the court no longer has jurisdiction over the controversy." *Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir. 1985).

### B. Legal Standard for Rule 12(b)(6)

Fed. R. Civ. P. 12(b)(6) governs motions to dismiss for failure to state a claim. While "detailed factual allegations" are not required, a complaint must have sufficient allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic. Co. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating such a motion, courts generally accept all factual allegations in the complaint as true. *Knievel v ESPN*, 393 F.3d1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statement, do not suffice." *Iqbal*, 556 U.S. at 668. When ruling on a Rule 12(b)(6) motion to dismiss, a court may, without converting the motion to one for summary judgment, consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of

4

1 judicial notice[.]" *U.S. v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

2 **IV.   ARGUMENT**

3     **A. The Complaint is Moot Because the Alleged Barrier has been**
4         **Remedied.[2]**

5     Plaintiff's only alleged barrier to access is moot because there is no barrier to
6 access and, therefore, no "live" controversy. Defendant's Wireless POS can be used
7 at the Kiosk's ADA-compliant sales counter.

8     Because the only remedy available under the ADA is injunctive relief, a Title
9 III claim becomes moot if a defendant can show that it has remedied the alleged
10 violation. *Sample*, 771 F.2d at 1338  (citing *Oliver v. Ralphs Grocery Co.*, 654 F. 3d
11 903, 905 (9th Cir. 2011) ("a defendant's voluntary removal of alleged barriers prior
12 to trial can have the effect of mooting a plaintiff's ADA claim"); *Bryant v. Yosemite*
13 *Falls Café, Inc.*, No. 1:17-cv-01455-LJO, 2018 U.S. Dist. LEXIS 5458 at *3 (E.D.
14 Cal. Jan. 11, 2018) (citing *Grove v. DeLa Cruz*, 407 F.Supp.2d 1126, 1130-31 (C.D.
15 Cal. 2005) ("[o]nce a defendant has remedied all ADA violations complained of by a
16 plaintiff, the plaintiff's claims become moot and he or she loses standing, whereby
17 the court no longer has subject matter jurisdiction over the ADA claims"); *Langer v.*
18 *Manuele*, No.: 18-CV-00104-BEN-NLS, 2018 U.S. Dist. LEXIS 101722 (S.D. Cal.
19 June 18, 2018) (granting motion to dismiss where ADA access barrier alleged in the
20 complaint was remedied by defendant).

21     In considering such a factual challenge to jurisdiction, courts are not limited to
22 the pleadings, but can instead consider any evidence concerning the existence of
23 jurisdiction. *McCarthy*, 850 F.2d 558, at 560. For example, in dismissing the

24

---

25 [2] Defendant does not concede that the sole barrier to access alleged by Plaintiff in this case ever
26 existed in the first place—indeed, it argues below that it never did.  However, for the purposes of
its mootness argument, Defendant addresses the sole barrier to access alleged by Plaintiff in this
27 case as if it has been fully remedied.

28

plaintiff's claims in *Shayler*, the court considered a declaration from the owner of the hotel and a letter from the Certified Access Specialist as extrinsic evidence that the alleged ADA violations had been remedied. *Shayler*, LEXIS 136451 at *3–5. The court found that the evidence adequately disputed the truth of the allegations and dismissed the case after the plaintiff failed to carry his burden to counter the evidence and affirmatively establish jurisdiction. *Id.*; *see also*, *Jinkins v. Irvine Props.*, No. 8:15-CV-00670-ODW-SS, 2016 U.S. Dist. LEXIS 75947, at *1–2 (C.D. Cal. June 8, 2016) (dismissing complaint pursuant to Rule 12(b)(1) where expert declaration supported defendants' contention that plaintiff's ADA claim was mooted by subsequent modifications to the property).

That is precisely the situation here. Plaintiff's sole claim in this case is that Defendant fails to provide an ADA compliant sales counter. That claim is not premised on the counter itself—the lowered portion of which, as Plaintiff admits and as Mr. Bishop confirmed, is compliant—but rather on the fact that there is not a Wired POS machine on the lowered, compliant, portion of the counter, such as those located on the higher portions of the counter. (ECF No. 1 at ¶ 12; Bishop Rep., pp. 4, 6.)

The lack of a Wired POS device on the lowered, compliant portion of the counter, however, does not constitute a violation because Defendant uses Wireless POS devices to complete transactions at the lowered, compliant portion of the counter—providing an equivalent facilitation in full compliance with the requirements of the ADA. (Bishop Rep., pp. 7, 9; Bibeau Dec., ¶ 4, 6.) Had Plaintiff done diligence or asked questions about the Wired POS or the availability of an alternative, he would not have faced any barrier to the enjoyment of Defendant's goods or services as he would have been able to complete any transaction at the lowered, compliant portion of the counter. (Bishop Rep., p. 9; Bibeau Dec., ¶ 5.) Certainly, he will be able to complete any future transactions at the lowered,

6

1  compliant portion of the counter using Defendant's Wireless POS devices.

2        Thus, even if Plaintiff could establish that he encountered a *bona fide* barrier,

3  that alleged barrier has plainly been remedied. (Bishop Rep., p. 9, Bibeau Dec. ¶¶ 3-

4  4, 6.) Accordingly, the sole issue raised in Plaintiff's Complaint is moot because it is

5  not "live" as required by Article III.

6      **B. The Complaint Fails to State a Claim upon Which Relief can be**

7         **Granted Because the Alleged Barrier Never Existed.**

8        Section 103 of the ADA Accessibility Guidelines provides businesses with the

9  option to comply with the ADA through non-traditional methods. Titled "Equivalent

10  Facilitation", Section 103 states "[t]his section acknowledges that nothing in these

11  requirements prevents the use of designs, products, or technologies as alternatives to

12  those prescribed, provided that the alternatives result in substantially equivalent or

13  greater accessibility and usability."[3] The purpose of Section 103 is to provide

14  businesses with flexibility, while still ensuring equivalent access as required by the

15  ADA.

16        In this case, there was never a violation of the ADA at the Kiosk because

17  Defendant provides "equivalent facilitation" in the form of its Wireless POS devices.

18  (Bishop Rep., pp. 7, 9; Bibeau Dec., ¶¶ 4, 6.) Here, Plaintiff filed this suit based on

19  the location of Defendant's Wired POS devices without conducting due diligence on

20  the Kiosk. (Bibeau Dec., ¶ 5.) Had he done so, Plaintiff would have learned of

21  Defendant's Wireless POS devices which afford disabled patrons substantially

22  equivalent or greater access to the enjoyment of Defendant's goods and services as

23  required by the ADA. (Bishop Rep., pp. 7, 9; Bibeau Dec., ¶ 4, 6.) Thus, had Plaintiff

24  truly attempted to avail himself to the Defendant's products or services, the location

25  of the Wired POS devices on the higher counters would not have "deterred" or

26

27  [3] ADA Compliance Directory, 103 Equivalent Facilitation, https://www.ada-compliance.com/ada-compliance/103-equivalent-facilitation.html (last visited Feb. 16, 2022).

28

"denied" him from making any purchase because an "equivalent facilitation" was available. (*Id.*) In short, because of the Kiosk's Wireless POS devices, Plaintiff had the access he claims to have lacked.

Defendant has undertaken substantial efforts to ensure that disabled customers can avail themselves to the goods and services provided by Defendant's store. As discussed above, Plaintiff seeks injunctive relief to compel Defendant to remove an alleged barrier that does not exist, and, in fact, never existed. Accordingly, Plaintiff fails to state a claim upon which relief can be granted.

**C. The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claim.**

The Supreme Court has explained that justification for supplemental jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants…" *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130 (1966). Under 28 U.S.C. § 1367(c) a district court has the discretion to decline to exercise supplemental jurisdiction if:

i.  the claim raises a novel or complex issue of State law,
ii.  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
iii.  the district court has dismissed all claims over which it has original jurisdiction, or
iv.  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Courts in the Ninth Circuit have generally declined to exercise supplemental jurisdiction to hear remaining state law Unruh Act claims—the type of claim brought by Plaintiff here—because, when all federal law claims are eliminated before trial, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Johnson v. Kim*, No. 2:14-cv-00196-KJM-CKD, 2016 U.S. Dist. LEXIS 6711 (E.D. Cal. Jan. 19, 2016), at *8;

*see* also, *Johnson v. 1082 El Camino Real, L.P.*, No. 5:17-cv-01391-EJD, 2018 U.S. Dist. LEXIS 32985 (N.D. Cal. Feb. 28, 2018) (dismissing plaintiff's ADA claim as moot and declining to exercise supplemental jurisdiction over the remaining Unruh Act claim). Additionally, the incorporation of an alleged ADA violation in a plaintiff's State Law Claim does not provide an independent basis for federal jurisdiction. *Kohler v. Southland Foods, Inc.*, 459 F. App'x 617, 618-19 (9th Cir. 2011); *Wander v. Kaus*, 304 F.3d 856 (9th Cir. 2002).

In the present case, Plaintiff bases his State Law Claim solely on a violation of the ADA. As such, if the Court dismisses Plaintiff's ADA claim, it will have "dismissed all claims over which it ha[d] original jurisdiction," the precise circumstance contemplated by Section 1367(c)(iii). Because the third circumstance identified in Section 1367(c) is present in this case, the Court should consider the *Gibb's* factors—judicial economy, convenience, fairness, and comity—to determine whether to exercise supplemental jurisdiction.

The central factors at issue in this case are fairness and comity. In this case, it appears possible that Plaintiff's choice to file in federal court, as opposed to state court, was motivated by a desire to avoid California's requirements for high-frequency litigants.[4] Accordingly, considerations of comity weigh heavily in favor of declining supplemental jurisdiction. Likewise, any convenience or efficiency from

---

[4] These requirements include: (1) a "high-frequency litigant fee," which requires high-frequency litigants to pay a $1000 filing fee to file a complaint, in addition to the standard filing fees; (2) high-frequency litigants must allege certain additional facts, including whether a high-frequency litigant filed the action, the number of construction-related accessibility claims that the high-frequency litigant has filed in the preceding 12 months, the litigant's reason for being in the geographic area of the defendant's business, and the reason why the high-frequency litigant desired to access the defendant's business.

A "high-frequency litigant" is defined as: A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation. Plaintiff has filed hundreds of complaints alleging ADA construction-related accessibility violations over the past 12 months, and, thus, is a high-frequency litigant as defined by California law.

the Court's continued exercise of supplemental jurisdiction over the State Law Claim is outweighed by California's substantial interest in interpreting and enforcing its own rules and would prevent plaintiffs from using California federal courts to evade California's state law requirements to bring hundreds of lawsuits—as Plaintiff has done here—without attracting state scrutiny. *Schutza v. Alessio Leasing, Inc.*, No. 18cv2154-LAB (AGS), 2019 U.S. Dist. LEXIS 60152, at *4 (S.D. Cal. Apr. 5, 2019).

The interests of fairness are similarly served, because ensuring that California's requirements are enforced permits California businesses to conduct their business without the looming threat of hundreds of suits. *See generally*, *Strojnik v. Urban Commons Cordova, LLC*, No. CV 19-2078 PA (Ssx), 2019 U.S. Dist. LEXIS 228580 (C.D. Cal. Aug. 20, 2019). Likewise, the Court's decision not to permit Plaintiff's attempt to circumvent the requirements put in place by the California legislature is not unfair to Plaintiff. Rather, it is simply the natural consequences of Plaintiff's decision to file this action in federal court rather than state court.

In sum, when considering the circumstances of this case, the *Gibbs* factors weigh heavily in favor of this Court declining to exercise supplemental jurisdiction over Plaintiff's State Law Claim.

# V.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss with prejudice Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction and failure to state a claim.

Respectfully Submitted,

VORYS, SATER, SEYMOUR AND PEASE, LLP


By */s/ Emily A. Papania*
EMILY A. PAPANIA
Attorneys for Defendant

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Emily A. Papania*
EMILY A. PAPANIA
Attorneys for Defendant